Case 16-2224, Kurt Mirandette v. Nelnet Inc. et al. Argument not to exceed 15 minutes per side. Ms. Conway, you may proceed for the appellant. Good morning. May it please the Court, my name is Shannon Conway, representing the appellant, Mr. Kurt Mirandette. With permission, I've reserved four minutes for rebuttal. The bad act here is not seriously disputed and can't be disputed on a motion to dismiss in any event. In servicing student loans, Nelnet sat on payments, in some cases for several weeks and on average for over two weeks, thereby attempting to collect so much additional interest before crediting a student loan borrower's payments. Mr. Mirandette is one of those people paying on a student loan, yet Nelnet insists that Mr. Mirandette has no remedy and that presumably Nelnet can continue this practice with impunity at least until some agency someday possibly gets around to regulating it. Do they insist that there's no remedy or are they saying you didn't plead one? Well, the district court dismissed and did invite, gave Mr. Mirandette 14 days to amend his complaint. But inherent in that invitation were these erroneous legal holdings that really foreclose any opportunity to amend. You know, to find that the Consumer Protection Act doesn't apply because this act has already been regulated when there isn't a single regulation that actually speaks to the crediting of student loan borrower payments. And then to find that there can't be a breach of contract because there's no provision in that contract that requires Nelnet to apply payments within a certain period of time. But there's also no provision anywhere in that contract that permits Nelnet to apply the payments at its discretion. Well, let's talk about that because I found the breach of contract claim somewhat confusing. In parts of it, it looks like it's pleading more generally that it's a breach not to credit it when received. But your argument was really about the mailbox rule, wasn't it? We planted the alternative. We were saying the contract doesn't define the term pay or payment. And inherent in any duty to pay is a corresponding duty to credit that payment in a contract that's all about the payment of a debt. So we're saying where contracts don't address this, many courts have found or applied the mailbox rule, saying look, if you're not going to dictate when a payment is deemed received, then we're going to dictate that it's when the borrower mailed it. But in the alternative, it's got to be upon receipt by Nelnet. What it can't be is two, two and a half weeks up to 29 days after the borrower put that check in the mailbox. So I'm not insisting that the mailbox rule apply. I'm insisting that it has to be something other than Nelnet's pure discretion of some time whenever it feels like. The problem is you're now switched to a contract, right? Where is the provision in the contract that says what you just said? There is no provision. But there's also no provision that says, and Nelnet will apply these payments whenever it feels like it. Or does that leave us one way or the other? Well, I think that leaves us in one of two places. I think that that means the contract is ambiguous, and that apparently Mr. Mirandet and Nelnet carry two different meanings for the term payment. May I ask you one other question just before we get in? Who made this contract? Was that the government or was that the servicing? It's a government form of promissory note with Nelnet as the lender and Nelnet as the servicer. In this particular case. We all agree that the district court didn't address your argument about receipt of the check being the appropriate time. Looked at the mailbox rule, said mailbox rule doesn't work, we're done. But that ignores your receipt argument. I'm struggling with why there is so much argument about having to include an omitted term when it seems to me that the appropriate thing to do here is just to interpret the contract language. I agree. I think the briefing definitely got lost in the weeds. Because at the end of the day, it doesn't matter whether it's an executory or non-executory contract or an integrated or non-integrated contract. What can't be disputed is that the term payment in a contract that's all about the payment of a debt is not an essential term. But at the end of the day, either the contract's ambiguous, in which case it should be interpreted in favor of Mr. Mirandet, or the contract is silent, in which case it's a fact issue as to whether Nelnet was acting within the reasonable expectation of the parties or within good faith that couldn't have been decided on a motion to dismiss. But a lot of the arguments you're not making until now, or at least not until this court. I mean, the whole business about good faith and fair dealing and executing the contract, that didn't come up. Well, the duty of good faith and fair dealing is inherent in every contract. There couldn't have been a separate cause of action. I know, but you have to make that argument if you want the court to consider it. Well, the duty of good faith, I mean, it's an interpretive tool. It's inherent. It was addressed in the briefing below, albeit barely. And it was addressed by the district court during the hearing. And then, you know, on appeal, when Nelnet broadened the scope of this appeal to tell the court, hey, there's an additional reason you can just dismiss this breach of contract claim. My question is that additional reason. Why didn't you plead that when the court gave you the opportunity to amend your complaint? Right. Well, because everything, all the rest of the holdings, I mean, everything was dismissed at that point. Well, I understand, but you still said there may be a claim here. I give you 14 days. Bring it back. Right. And then so maybe we could have gone back and we could have specifically. But, you see, when you didn't and you come here and you make the claim, the district court never had that in front of them. But that was one, well. I mean, they got it tough enough without saying they got to figure out what you might tell us later on. Right. I mean, in terms of our pleading, you know, the standard being did we plead facts with sufficient particularity to state a plausible claim? We absolutely did. We had no additional facts to plead. We laid it all out in great detail. The trouble is I think what I'm trying to say is you had facts, but you didn't tie it to any legal theory, really. Except that I tied it to a breach of contract claim and a Consumer Protection Act violation. Well, he said that the consumer violation didn't work. I mean, that's what the district judge said. Right. But that was error also. That's error because it's not regulated. So that exemption cannot apply. Do you have any case? I thought the cases say the particular act doesn't have to be regulated. The question is whether the transaction in a broader sense is regulated. It's actually exactly the opposite. I mean, the district court relied on the Kunselman case, and Nelnet relies on the Kunselman case. And, in fact, we rely on the Kunselman case, which puts forward the common sense proposition that it must be the very act that is subject to regulation, not that the business is regulated generally. In fact, Nelnet keeps arguing that it's almost as if there's two standards, regulated or subject to regulation. But the phrase subject to regulation appears nowhere in the statute. That's almost manufactured. It appears in Kunselman. It appears in Kunselman that the very act be subject to regulation, not like subject to regulated like it could be one day regulated. That would tear the guts out of the statute itself. It's that the very act is already being regulated. I mean, subject to regulation, already being regulated. It's just it's not this double standard of. Isn't the problem with Kunselman that when the decision was made in the case and there was a prospective regulation, the court held that it was both prior to the regulation and prospective with the regulation. But it was the very act being complained of. And here we don't have any regulation speaking about the crediting of borrower payments. In fact, Nelnet also cited some memoranda by the CFPB, the Consumer Finance Protection Bureau, and the Department of Education that were talking about initiatives that, you know, to make it so that borrowers could expect their servicer to apply their payment at the time it was received. But Secretary DeVos just this month withdrew those memos that even set those initiatives into motion. So at the end of the day, yes, the Department of Education and the Consumer Finance Protection Bureau have looked at this issue, have heard complaints from borrowers, have talked about maybe we need to make this like Regulation Z, which does specifically say that a mortgage loan servicer must apply the payment upon receipt. But the Department of Education has never proposed, much less adopted, any such regulation. So I think what the notion is is that Mr. Mirandet and all the other borrowers who have their loans serviced by Nelnet must sit on their hands and wait for somebody someday in D.C. to decide to regulate that. And that's not what the judiciary system is about. There's a legal wrong here, and there has to be a remedy. And the legal, your statement of issues, which one of the issues do you say the court got wrong? You lay out four of them. Right, that the Consumer Protection Act claim is exempted by Section 59-16. Okay, so if we disagree with you that the Nebraska Deception Trade Practice does not apply to this, you lose. Well, with regard to the Deceptive Trade Practices Act, that was dismissed because of statute of limitations. For whatever reason, if we decide it doesn't work in this case, you lose. Those are two different claims, though. The CPA is one claim. Correct. And then the Deceptive Practices is a different claim. Correct. And I just want to briefly address that Deceptive Trade Practices since we haven't talked about it. But the crediting of student loan payments is a trade practice under the Deceptive Trade Practices Act. And the statute of limitations cannot be said to have run at the time the contract was entered into or at the time the loan money was dispersed. Okay, and what's the case that says that the servicing is covered by the act? There is no case that specifically says it. There's also no case that specifically doesn't. The district court relied on AHIBARINE, which is a case out of the D.C. District Court, regarding the D.C. Consumer Protection Act, which specifically defined the term trade practice and set forth an enumerated list of deceptive trade practices, which the court found that the – When is the trade practice? Is it the contract that's entered into? In other words, when the money is loaned and the note is signed, is that the deceptive portion? No. You're not saying that. You're saying it's how they collect the money under this. But that didn't deceive the borrower from going into the transaction. I'm just trying to put a – Right. Where the deception begins. The borrower is deceived every time he sends a payment, let's say on April 1st, assuming that it's going to be applied to his account somewhere around April 1st, and it doesn't get applied until April 29th. So if I loan you money, we agree on the terms, that's not a deceptive practice, right? But if I don't credit you correctly under your sometime later, then that becomes a deceptive practice. Is that your argument? Yes. And for the district court to have said that the statute of limitations begins to run at the time the contract was entered into, that's essentially a statute of repose, which isn't at issue here. Because that means NELNET can service correctly for four years, and then for the remainder of the loans term, six years, 16 years, 26 years, start doing whatever it wants, applying payments whenever it wants. And that's – it has to be that the statute of limitations – Well, the person in that position may be wrong, but I'm not sure how they're deceived. You're deceived if you enter into a promissory note – well, you're deceived first, if you enter into a promissory note on the assumption that your payment actually means something, your payment reduces your principal in a timely manner. Then you're deceived again every time you send a payment, and then you receive an invoice, and then you finally get your check statements and you look at your payment history and you see, wow, they're not applying these payments any time near the time I send my payment. So that's a deceit that – I mean, or maybe it's a purchase, because knowingly or not, every time Mr. Marendette writes a check that they sit on and collect interest, he actually made a purchase. I understand. I mean, you can try to fit this into different statutory frameworks, but I guess the real question is whether the legislature intended the statute to cover a particular transaction or aspect of a transaction. And from what I hear you saying, you don't have a case that says that. Not for the Deceptive Trade Practice Act. So to get back to the core, you were listing your claims, and we've gone through the two statutory ones, and that leaves the contract claim. There is a substantial discussion of a unilateral – this being a unilateral contract, and you respond explaining why the second restatement of contracts has evidence that that sort of distinction between a bilateral and a unilateral contract is no longer in existence. Give me a quick explanation for why you think terming this contract unilateral is just ineffective. I just – right. I don't think it matters. This is a contract about the payment of a loan, a debt. And so inherent in the duty of Mr. Marendette to make that payment is a corresponding duty by NELNET to credit that payment. And the terms pay isn't defined. So, you know, it's ambiguous, in which case the contract should be interpreted in Mr. Marendette's favor, or it's silent, and then we do need to look at whether NELNET acted within the reasonable expectations of the parties or acted within good faith in deciding to take so long to credit any payment. Is NELNET the lender or the servicer or both? Both. Okay. And why do you keep saying it should be interpreted in favor of your client if it was drafted by a third party? Well, NELNET is – I mean, the contract, it's a promissory note, a master promissory note that, yes, was drafted by the government but for NELNET's use. All the student loan lenders use this form of contract and impose it on borrowers like Mr. Marendette. So it's imposed on Mr. Marendette. He doesn't get a say in what the contract says. If he wants the money for his daughter to go to school, then he needs to sign that contract. But it sounds like it was imposed on them, too. Arguably it is. But, I mean, they're the ones that are interpreting the term payment to mean whenever they feel like getting around to it. And so, I mean, if you guys agree that that's a reasonable interpretation, then I guess we're done. But it's not a reasonable interpretation. They're getting all the benefit right now. They're unilaterally deciding how payment is applied. And Mr. Marendette and every other borrower with a loan serviced by Marendette is suffering with that decision. And so we're coming to the court saying. All right. You have your rebuttal. Let me ask you one question on that. When were the checks cashed? I mean, you always say, well, we sent them in on the 1st. They didn't credit us until the 15th. But if they hadn't cashed the check to the 15th, you were presumably earning interest yourself on that money. So when does? Honestly, Your Honor, I don't know. I mean, we haven't gotten to the discovery phase to vet anything. I know, but you're making claims. But, yeah, with regard to our claims, I mean, we didn't. I probably do know the answer to that, but I don't know the answer today. I mean, when we looked at the date of the check, and I believe he looked at the endorsement of the check and then compared that to the effective date that was on this payment history, not on his invoices, on the payment history requested, that was when there was this realization that, wow, there's a whole lot of time passing from the time I put that check in the mail to the time that I'm getting credited. Right, but you're not saying that there's a lapse in time from the time it was paid by your bank and it was credited. I'm not saying that today because I don't have enough information to say that today. Thank you, Your Honors. May it please the Court. Good morning, Your Honors. Please enter the appearance of Dan Kaplan from Perry, Guthrie, Haas, and Guestford in Lincoln, Nebraska, on behalf of the appellees. Probably the first order of business that I should take care of is a brief introduction of who the parties are, who the players are here. Mr. Mirandet is a borrower on a student loan that was made under the Federal Family Education Loan Program, the FELP program of the Higher Education Act. That student loan program is highly regulated from about every corner of the regulatory universe, from the Department of Education to the CFPB to the Higher Education Act itself, and the regulation is issued and promulgated by the Department of Education. Nelnet, the appellee, is a student loan servicer servicing that loan. In addition, the appellant in the complaint has asked for class certification, made allegations for a class, and that class is comprised of all borrowers whose student loans are serviced by Nelnet. After you sift through the complaint and you wade through all the excerpts yanked from the various internet blogs railing against student loan servicers and the smoke has cleared, what's left at the end of the day is a hodgepodge of fatally defective theories. Well, but the underlying claim is really simple. The claim is that you get checks and you sit on them before you credit them, and that affects how the interest is computed. And none of those claims, as asserted in the complaint, create a cause of action for which relief can lie. Can you keep your voice up when you finish your sentences? Sure. I heard you. So none of them, right, you say it's not covered by the CPA because it's regulated, right? It's not covered by the deceptive practices because it doesn't fall within the purview. And then what about the contract claim? On the contract claim, you heard counsel for the appellant say that there is no provision in the contract that requires an internet servicer to do anything. To what? No, I did not hear that. Explain to me that again. Okay. Mirandet's allegation is basically that Mirandet promised to pay the student loan back. And their argument, as I understand it, is that the word pay, when they promise to pay, like in any promissory note, is ambiguous. And therefore, the appellant is saying payment should be credited when it's dropped in the mail under the old mailbox rule. And now on appeal, they are raising the argument that it should be credited when paid. I understood that they raised the argument that it should be credited on receipt below and that the court below failed to analyze it. I think that the . . . It's in the complaint. As we understood it, the mailbox rule was what was advanced at the complaint level and at the district court level. Well, if it's in the complaint, then you would concede it's been pled. I would. That's fair. I'm struggling with your characterization of the contract as a contract under which you owe no responsibilities whatsoever. I'm looking at the form itself, and I'm seeing several spots that I think evidence responsibilities on your part, particularly, I think, providing the loan person with a repayment schedule that identifies my payment amounts and due dates. I don't see how that's unilateral. If you've got to provide them with the information and correctly show their payment dates and their due dates, what does due date mean in that contractual language to you? To me, that just means when the borrower is required to make the payment. Okay, so that would be the date that you have to have received the payment. If that's the due date, the due date is due to you, correct? Correct. Or do you . . . you said something different. You said the date they have to make the payment. So how do you . . . can you elaborate on your definition? Well, the due date is when the payment is made. When it's made. Right. And . . . Can you make it any time? I mean, the note seems to say you're going to tell them when the due date is, but there's nothing in the record that says when the due date is that I found. The . . . there is no promise. What we have to remember here is there is no promise made by NILMAT to credit payments on any particular date. That's the ground . . . No, but . . . . . . of the complaint. Doesn't it seem . . . I think this is factually, at least. I think legally there's more problems. But factually, at least, isn't this kind of the case that they borrow money and they owe interest until at least you receive your payment? I mean, presumably when you receive your payment, that cuts off interest if they paid it in full, right? Yes, Your Honor. Or partially. So the question is, why is there all this difference of when you received your payment, five days, 25 days? Is that manipulation or is that the way they mail it out? I don't know. But it seems to me the easy answer to this is that they're entitled to rely on when you receive the payment cuts off the interest. I do not take the position, and I think it would be intellectually arrogant for me to take the position, that there isn't some claim out there in the universe of claims that you could place into a complaint and survive a Rule 12b-6 motion. In this case, the plaintiff . . . Well, that's why I said there's some legal problems with my analysis. I understand it. But factually, isn't that really the trick is once you receive your payment, you've been paid? Right. And the appellant could have complained to the CFPB, could have complained to the Department of Education. In fact, CFPB has leveled huge fines against student loan servicers such as Navient and Discover Bank for various violations. Would you agree with me, and I'd like a yes or no, that if you receive the payment, that is the day you should give them credit? Not whether they pled that, but whether that should be the day you give them credit? I think there's logic to that, yes. There's what? I think there's logic to that. And does the contract require that? I don't mean is there a contractual provision that says that payment is the date of receipt. I'm asking you whether when you have a contract that requires payments or a note that requires payments, whether one reads in, unless it's otherwise specified, that you're paid when you receive the payment. One thing that I think would be helpful to back up just a second here for and look at is the appellant, Mr. Mierendet, is pursuing the servicer here, not the lender. Nellett has a servicing agreement with the lender. So you're in privity of contract with the lender? Uh-huh. You're in privity of contract with the lender? The servicer is. The servicer is. Nellett is not in privity with the borrower, Mr. Mierendet. Mr. Mierendet is not a party to the servicing contract. Well, it's a third-party beneficiary of the servicing contract. There's a wealth of cases out there where borrowers have sued the servicer and the courts have said there's no privity dismissed. Is that what you argued to the district court? That's part and parcel with the argument that there is no promise made by Nellett here. There is no promise to credit a payment as of a certain date. I guess that's where my struggle is because you are, in effect, the lender and, under this contractual agreement, the lender and the servicer. And I'm seeing language in this contract that says to me that you do have responsibilities. Take the receipt of the payment, which you now concede is the time that it should have been accredited to the account. If you don't have a responsibility to credit that at that time, how do you ever determine your other responsibilities, which is to specify a late charge for each late installment if I fail to make any part of a required installment payment within 15 days after the date it becomes due? The only reasonable way to interpret this language, and I think that's all it takes is interpretation. I don't see that you have an omitted provision. You have a responsibility regarding crediting the money that comes to you, and in order to be able to calculate how much they owe you if there's a late fee, isn't that your responsibility under the agreement to determine if a late fee is due? The servicer does not owe a contractual duty. Are you saying you are only the servicer? There is no allegation in the complaint that Nellett is the lender. It's the servicer, the putative class, as described by the plaintiff, is the class of all borrowers whose loans are serviced by Nellett. I thought it was both. I thought it included both the lender and the servicer. We're at a motion to dismiss. We're not at an evidentiary stage, so if they have alleged that they have entered a contract with you as a servicer I don't see that disputed, that these individuals have entered a contract with you. I would absolutely dispute that. There is no servicing agreement between the borrower and Nellett, and there's no allegation or claim that there's any third party. Then how do you have the right to bring claims for past due installments and charge interest fees? The servicer only has a right, as far as the servicing agreement permits it to, with the lender. To act on behalf of the lender. I guess then that becomes a legal question if this case goes forward. But right now what you have is whether there has been a claim stated, and that's why I'm struggling with your responsibilities regarding receipt of payments, determination of due dates, and calculation of late fees. Why does that not stay the claim? Because the servicer does not owe any contractual duty, has not made any kind of promise to the borrower. Who gets the late fees? I believe it's the lender. Your client does not get the late fees? The government does? I would not swear that that's the case, but that's my understanding. Well, you'd almost have to swear if you say, we're just a service organization. To my knowledge, Your Honor, the servicer does not retain the late fees. The servicer is paid a servicing fee. Do you know who determines the late fees? It would probably be Nelnet as the servicer, would calculate those. And how do you do that? If there is a late payment, then they assess it. When is a payment late, I guess, is what we're trying to say. If it's not made on time. In this contract, what time? In her particular client. I looked through, I couldn't find a due date, so I'm not sure when on time means. It says a due date will be provided for them, but I haven't seen anybody say their due date was. That was not a part of the complaint. The allegation is that you made and serviced the loans. In the complaint. I believe maybe my time is up, may I proceed? You can answer the question, sure. My recollection is that there is no allegation that Nelnet made the loan. What about paragraph 23? For all its student loan borrowers, Nelnet calculates interest rates and loans. It calculates fees based upon the date the payment is made. Nelnet has sole control over the date upon which it gives each borrower credit for its monthly loan payments. As servicer. Nelnet does that as servicer. The claim is against you for doing that improperly. Yes, ma'am. You're saying there's no duty, there's no duty either statutory or contractual to the borrower because you have no contract with the borrower. No privity, there's no contract between the borrower and the servicer, therefore the contract. But didn't you assume, I mean... So you're saying that they have to sue the lender for your actions. I'm not going to... It's not my responsibility to figure out how they can obtain a remedy here. In fact, I would be violating my responsibility by doing that. I can just say my narrow position is this complaint today does not state a claim. Okay. Just one second. Did the district judge rule on this aspect of your argument that you have no duty because there's no contract with you? I do not believe that the judge ruled on that. He was more focused on the mailbox rule issue. On the what? On the mailbox rule issue. Okay. Go ahead, I'm sorry. No, that's... It just seems to me that the issues you're raising now were not raised below and have not been resolved by the court below. What's been resolved by the court below is the claim that under two statutes there's not a cause of action and there's not a breach of contract, but not on the basis that you're arguing here. The argument has always been that NailNet never made any promise to credit payments as of a certain date, and that's the threshold requirement for any breach of contract claim. You've got to show a promise by the defendant and you've got to show a breach by the defendant of that promise. Neither has been shown here. Okay. So the question to us is what the contract requires and whether there's been a breach alleged and a claim that's viable. That's the question. I think I would rephrase the question respectfully, that it's whether NailNet has made any promise to credit the payment. Which is your unilateral argument. Yeah. Thank you. Thank you. Thank you. Just a couple quick points, Your Honors. One is the complaint sued NailNet Inc. and NailNet Servicing LLC and then, of course, defined them together and made all the allegations against both who we believe was the lender and the servicer. Again, we didn't get that far for NailNet didn't redefine itself or tell us we were wrong when they moved to dismiss. Did you allege that they made and serviced the loan? Yes. And then in the appellate briefing, there were a lot of arguments made by NailNet, certainly in the one footnote when it disclaimed any duties under the contract and talked about the limited duties that the lender had or how they weren't duties but discretionary acts. That's primarily the unilateral contract argument that we've already discussed. Right, right. Are you saying he didn't raise it below? No, I'm just saying that if you didn't understand there to be claims against NailNet the lender, then why make so many arguments that the lender has no duties? Okay. Okay. And then the other thing that I wanted to address because it's kind of been swept under is that the Consumer Protection Act claim, we really, really believe that it is not exempt under the exemption. And I know that Mr. Kaplan talked about all the regulations, but there is no regulation at all that discussed the timing of crediting student loan payments. In the Kunselman case, I just want to reiterate that if you read it, yes, it held that the installment loan at issue there, you know, that the very act complained of was subject to regulation. In all the other cases involving the Nebraska Department of Banking and Finance, it seems like the Supreme Court of Nebraska just kind of said, oh, well, we found that a loan is already regulated by the Department of Finance and Banking of Nebraska. But there is no case by, like every other case that looks at Kunselman, what it stands for is the common sense proposition that it must be construed liberally to give it effect, that the Nebraska Consumer Protection Act must be construed liberally to give it effect, and that it is not enough for the business to be regulated generally. So it is not enough that student loan servicing is subject to a panoply of regulations. What matters is that the very act of crediting student loan borrower payments has not been regulated. And I didn't want that to get swept away, you know, with an affirmance of the dismissal. Is this the issue that the judge asked whether he should certify, or was that a different issue? Well, this is the issue. So you both opposed it, right? Well, we've said and still believe it's unnecessary because, you know, statutes may be read by their words. It's Nelnet who's injected, and Kunselman, but in a very limited scope. It's Nelnet who's injected this, or subject to regulation. That's not in the statute. So a plain reading of the statute, and truthfully, a plain reading of Kunselman and what it really means, and what the court was really saying about that exemption, it could be you guys. It could be the district court. It could be Nebraska Supreme Court isn't necessary. But what do you do with the banking cases? The banking cases are exactly that. It's the Nebraska Supreme Court giving deference to the Nebraska Department of Banking, and other than Kunselman, who did go through the analysis and found that the very installment loan at issue was regulated by the Department of Banking and subject to the Installment Loan Act of Nebraska. And then the other cases, they really didn't talk about the meaning of the exemption, Hydroflow, McCall. They just said, oh, well, we've already held that this is an installment loan or industrial loan, and the department. I mean, they just said we've already addressed this issue. Well, are you saying they were wrong, those guys? No, I'm saying if they relied on Kunselman to find that that particular loan at issue was already subject to the regulation of the Nebraska Department of Banking and Finance, that's not wrong. I'm just saying the later cases, the court didn't really go into an analysis of what the statute meant. It just said, oh, here's this kind of loan again, and we've already held that this kind of loan is exempt under the statute. And you're saying this is not regulated. This is not regulated. The loan is regulated. Isn't it the same thing? This type of loan is regulated. It's just this provision is not regulated. Yeah, but that issue in the banking cases were things like opening an account. Well, the Department of Finance and Banking regulates all things with practice and procedure of banks, including opening an account. What is here clear from the face of every regulation they cite and underscored by all the other sources they cite is that it's not regulated. It's being looked at. It's being thought about. But it's not fair to make all the student loan borrowers wait until somebody decides. Thank you, Your Honors. Thank you. Thank you both.